IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORETTA BOONE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA SOUTHEASTERN TRANSPORTATION AUTHORITY | : | NO. 14-1373 |

**MEMORANDUM**

**Padova, J.** **December 4, 2014**

Plaintiff brings this sex discrimination action against her employer, the Southeastern Pennsylvania Transportation Authority ("SEPTA") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.* SEPTA has moved to dismiss the Amended Complaint's sex discrimination and hostile work environment claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we grant SEPTA's Motion.

## I. BACKGROUND

The Amended Complaint alleges the following facts. Plaintiff began working for SEPTA in October 2011 through a staffing agency. (Am. Compl. ¶ 7.) SEPTA hired Plaintiff in March 2012 to be a Customer Representative at CCT Connect, a business that SEPTA owns and operates. (Id. ¶ 8.) After Plaintiff began working for SEPTA, "[she] was constantly subjected to sexual harassment, sexual slurs and innuendoes by her direct supervisor, Chevelle Coaxum. (Id. ¶ 9.) Beginning on Plaintiff's first day of work, Coaxum constantly asked Plaintiff if she was one of the girlfriends of CCT's Chief Operating Officer, Warren Montague. (Id. ¶¶ 8, 10.) Coaxum also asked Plaintiff if Ray Massy, another employee, was her boyfriend. (Id. ¶ 14.) In

addition, Coaxum "consistently made comments about Plaintiff's buttocks," such as "[y]ou [sic] not the only one with an ass here[.]'" (Id.) On another occasion, Coaxum commented to Plaintiff, who was eating a hotdog, "'[o]h, that's why your ass and hips look the way they do!'" (Id. ¶ 11.) "Plaintiff was severely embarrassed and humiliated by" this comment, and she "got up from her desk and went to the bathroom crying." (Id.)

Once, when Plaintiff received flowers at work, Coaxum told Plaintiff that she "must have [f---ed] someone real good in order to get some flowers.'" (Id. ¶ 16.) Plaintiff, who was was "extremely upset at [Coaxum's] continuous, persistent and pervasive sexual harassment," cried in front of Montague when she told him about this incident. (Id.) On another day, when Coaxum saw that Plaintiff and Montague were both wearing pin-striped suits, she said to Plaintiff, "[w]hat, did you guys wake up in the same bed today?" (Id. ¶ 17.)

Coaxum also cursed at Plaintiff when Plaintiff asked for assistance with assignments (id. ¶ 13), spoke loudly "in the office about sexual activities she participated in, and constantly referr[ed] to her teenage daughter as a 'bitch'" (id. ¶ 15). Plaintiff informed Coaxum that she found her comments to be offensive, but Coaxum "did not stop making offensive sexual comments in the workplace." (Id.)

After Plaintiff complained to Montague about Coaxum's behavior, Coaxum "started giving Plaintiff outrageous assignments and sabotaging her work . . . ." (Id. ¶ 16.) On April 16, 2012, Plaintiff began working in SEPTA's Travel Center, and she was assigned to a new supervisor. (Id. ¶ 18.)

After Plaintiff filed complaints with SEPTA's EEO office and with the Pennsylvania Human Relations Commission ("PHRC"), she was subjected to "retaliatory adverse actions." (Id. ¶¶ 20-28.) The retaliation included exclusion from training, excessive monitoring, and

failure to pay overtime. (Id. ¶ 23.) In addition, investigators in SEPTA's Office of Inspector General engaged in retaliatory harassment of Plaintiff by questioning her about whether she was having sexual relations with Montague, even though Plaintiff had informed the investigators that she was represented by counsel. (Id. ¶ 28.) Plaintiff's employment was terminated on May 8, 2013, after she refused to answer the investigators' questions without her attorney present. (Id. ¶¶ 29, 31.)

Count I of the Amended Complaint asserts claims that Plaintiff was fired and subjected to a hostile work environment because of her sex in violation of Title VII. Count II asserts a claim that Plaintiff was subjected to retaliation after complaining to SEPTA and the PHRC about sex discrimination in violation of Title VII. Count III asserts claims that Plaintiff was subjected to disparate treatment with respect to employment opportunities and to a hostile work environment because of her sex in violation of the PHRA. Count IV asserts a claim that Plaintiff was subjected to retaliation after complaining about or opposing sex discrimination in violation of the PHRA. Defendant seeks dismissal of Counts I and III only.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no

deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (alteration in original) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

### A. Plaintiff's Termination

Counts I and III of the Amended Complaint assert that Plaintiff was discriminated against on the basis of her sex in that she was terminated under circumstances in which a male employee was not terminated. Defendant argues that we should dismiss these claims because the Amended Complaint does not plausibly allege a prima facie claim of sex discrimination. Specifically,

Defendant argues that the Amended Complaint fails to allege the existence of a similarly situated employee not in Plaintiff's protected class who was treated differently than Plaintiff.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). If the complaint does not allege facts that constitute direct evidence of sex discrimination, as is the case here, the plaintiff's Title VII and PHRA claims are analyzed pursuant to the burden-shifting framework provided by McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-03 (1973).[1] Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted). If the plaintiff does so, the burden then shifts to her employer to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action taken against her. Id. (quoting McDonnell Douglas, 411 U.S. at 802). If the employer meets this burden, the plaintiff must "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); and McDonnell Douglas, 411 U.S. at 804).

Under McDonnell Douglas, a complaint asserting a prima facie case of employment discrimination in violation of Title VII or the PHRA must allege facts that, if true, would establish the following elements: "(1) the plaintiff is a member of a protected class; (2) the

[1] The standard for pleading sex discrimination claims in violation of the PHRA is identical to the standard for pleading such claims under Title VII. See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) ("'The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania Courts have construed the protections of the two acts interchangeably.'" (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001))).

plaintiff was qualified for the position [she held]; (3) the plaintiff suffered an adverse employment action . . . ; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination." Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (citing Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013); and Makky v. Chertoff, 541 F.3d 205, 204 (3d Cir. 2008)); see also McDonnell Douglas, 411 U.S. at 802. "'The central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their [protected class].'" Sarullo, 352 F.3d at 798 (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).

The requirement that the complaint allege facts that would establish an inference of discrimination may be satisfied through allegations of facts that identify "a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably . . . ." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 170 (3d Cir. 2013). "While 'similarly situated' does not mean identically situated, the plaintiff [and the comparator] must nevertheless be similar 'in all relevant respects.'" Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting Holifeld v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). We consider the following factors in determining whether employees are similarly situated in the context of workplace discipline and personnel actions: (1) whether the employees had the same supervisor; (2) whether the employees were "'subject to the same standards[;]'" and (3) whether the employees "'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" McCullers v. Napolitano, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

The Amended Complaint alleges that Plaintiff is a woman and that she was fired from her position; it thus alleges that she is a member of a protected class and that she suffered an adverse employment action. See 42 U.S.C. § 2000e-2(a)(1); Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 766 (3d Cir. 2004). Moreover, Defendant does not presently contest Plaintiff's qualifications for her position. Accordingly, we must determine only whether the Amended Complaint plausibly alleges the fourth element of a prima facie case of sex discrimination: that Plaintiff was treated differently than someone not in her protected class.[2] In this regard, we find that the Amended Complaint does not contain any allegations that would support a conclusion that Plaintiff and Monaghan were similarly situated. For example, it does not allege that Plaintiff and Monaghan had the same supervisor or performed similar duties. See McCullers, 427 F. App'x at 195. Likewise, the Amended Complaint does not allege that Plaintiff and Monaghan engaged in similar conduct leading up to the decisions to either terminate or retain them as employees. See id. It also does not allege any facts regarding individuals other than Montague with whom we can compare Plaintiff. As a result, we conclude that the Amended Complaint fails to allege facts "'sufficient to give rise to an inference of discrimination.'" See Wooler v. Citizens Bank, 274 F. App'x 177, 180-81 (3d Cir. 2008) (concluding that the fourth McDonnell Douglas requirement was not satisfied when plaintiff "fail[ed] to provide any 'evidence that similarly situated males were treated differently' or any 'other evidence sufficient to give rise to

[2] Plaintiff argues that the Amended Complaint alleges that she was treated differently, in connection with her termination, than a similarly situated individual not in her protected class as follows: (1) a male SEPTA employee pled guilty to federal charges arising from his acceptance of bribes from SEPTA vendors; (2) SEPTA did not fire him for several months after he pled guilty; and (3) unlike Monaghan, "Plaintiff never engaged in any criminal action and was never arrested or convicted of any criminal activity," yet she was terminated "because she had filed an administrative complaint with the PHRC of sexual harassment against SEPTA." (Am. Compl. ¶ 38.)

an inference of discrimination' to establish a prima facie case of gender discrimination under Title VII"). We therefore conclude that the Amended Complaint fails to state a plausible claim of sex discrimination in violation of Title VII and the PHRA and grant Defendant's motion as to Plaintiff's sex discrimination claims in Counts I and III.

B. Hostile Work Environment

Count I of the Amended Complaint alleges that Plaintiff was subjected to a hostile work environment on the basis of her sex in violation of Title VII. Count III alleges that Plaintiff was subjected to a hostile work environment on the basis of her sex in violation of the PHRA. Defendant argues that Plaintiff's hostile work environment claims should be dismissed because the Amended Complaint does not plausibly allege that she was discriminated against because of her sex. Specifically, Defendant argues that because Plaintiff and Coaxum are both female, the Amended Complaint must satisfy the requirements for a claim of same-sex discrimination as set forth by the United States Court of Appeals for the Third Circuit in Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257 (3d Cir. 2001).

To state an actionable hostile work environment claim against an employer, a complaint must allege that: "'(1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.'" Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (setting forth the elements of a Title VII hostile work environment claim) (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir.

2001)).[3] In Bibby, the Third Circuit set forth three situations in which same-sex sexual harassment may constitute discrimination "because of sex" in violation of Title VII: (1) "where there is evidence that the harasser sexually desires the victim[;]" (2) "where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace[;]" and (3) where "the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender." Bibby, 260 F.3d at 262-63.

The Supreme Court has cautioned that a plaintiff who asserts a same-sex harassment claim "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (alterations in original). Consequently, "'[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender . . . .'" Shramban v. Aetna, 262 F. Supp. 2d 531, 536 (E.D Pa. 2003), aff'd, 115 F. App'x 578 (3d Cir. 2004) (quoting Koschoff v. Henderson, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000)). The Supreme Court has also explained that in all hostile work environment claims based on the plaintiff's sex, the allegedly hostile environment must be "both objectively and subjectively offensive," and that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Oncale, 523 U.S. at 82). These requirements are intended to "ensure that Title VII does not become a 'general civility code.'" Id. at 788 (quoting Oncale, 523 U.S. at 80).

[3] The standard for pleading a hostile work environment claim under the PHRA is the same as that under Title VII. See Huston, 568 F.3d at 104 n.2.

Plaintiff argues that the Amended Complaint plausibly alleges a hostile work environment claim of same-sex harassment based on gender stereotypes. Accordingly, we examine whether the Amended Complaint alleges facts that, if true, would establish that Coaxum's "conduct was motivated by a belief that [Plaintiff] did not conform to the stereotypes of . . . her gender."[4] Bibby, 260 F.3d at 262-63. "All [a] plaintiff need allege to survive a motion to dismiss is a 'refusal to conform to a gender stereotype' and an allegation that this led to discrimination." Barrett v. Pa. Steel Co., Civ. A. No. 14-1103, 2014 WL 3572888, at *3 (E.D. Pa. July 21, 2014) (quoting Rachuna v. Best Fitness Corp., Civ. A. No. 13-365, 2014 WL 1784446, at *7 (W.D. Pa. May 5, 2014)). The Barrett Court refused to dismiss a same-sex hostile work environment claim where the complaint alleged that the plaintiff was made fun of for "not cursing and engaging in crude banter like his fellow male-coworkers" since "[t]his indicates (1) that plaintiff did not curse or engage in crude banter, (2) the males in the office considered this normal or stereotypical male behavior and (3) this lack of perceived maleness was the reason for plaintiff's being discriminated against." Id.; see also Rachuna, 2014 WL 1784446, at *7 (holding that allegations that defendant made crude sexual remarks and questioned plaintiff about his sexual habits and that defendant treated plaintiff this way because he perceived plaintiff as not being masculine enough were sufficient for plaintiff's complaint to plausibly allege that plaintiff was discriminated against for failing to conform to gender stereotypes).

The Amended Complaint does not allege that Coaxum harassed Plaintiff for failing to

[4] "[W]e must . . . consider 'any stereotypical statements within the context of all the evidence of harassment, and then determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of [her] sex.'" Kay v. Indep. Blue Cross, 142 F. App'x 48, 50 (3d Cir. 2005) (quoting Spearman v. Ford Motor Co., 231 F.3d 1080, 1085 (7th Cir. 2000)).

conform to societal stereotypes of how women ought to behave. Rather, it merely alleges that Coaxum made crude comments and jokes, some of which were humiliating, to Plaintiff on several occasions. Comments made by a plaintiff's same-sex co-workers that are "crude" but do not "fall[] into any of Bibby's same-sex discrimination categories" do not constitute same-sex sexual discrimination in violation of Title VII. Fogleman v. Greater Hazleton Health Alliance, 122 F. App'x 581, 584 (3d Cir. 2004). We conclude, accordingly, that the Amended Complaint does not plausibly allege a claim of same-sex sexual harassment. We further conclude, therefore, that Counts I and III of the Amended Complaint fail to state hostile work environment claims in violation of Title VII and the PHRA, and those claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, we grant Defendant's Motion to Dismiss. Although Plaintiff has not sought leave to file a second amended complaint, we grant her leave to amend Counts I and III to state facially plausible sex discrimination and hostile work environment claims in violation of Title VII and the PHRA against Defendant. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a

District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))). An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.